UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

MARY DARLENE ROSE )
)
V. ) NO. 2:14-CV-88
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. The plaintiff's application for Supplemental Security Income under the Social Security Act was denied following an administrative hearing before an Administrative Law Judge ["ALJ"]. Both parties have filed Motions for Summary Judgment [Docs. 11 and 15].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence.

*Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

The plaintiff's application for benefits has been the subject of 3 administrative opinions by two different ALJ's. The first two (Tr. 16 and Tr. 440) were decided by the same ALJ. The first decision was the subject of a remand order from the United States District Court for the Western District of Virginia (Tr. 423). Following the second decision, likewise adverse to the plaintiff, it was remanded by the Appeals Council with instructions for the case to be assigned to a different ALJ. It was the adverse decision of that ALJ which is the subject of this action for judicial review. (Tr. 343-361).

In the present incarnation of this claim, plaintiff asserts that her disability onset date was December 15, 2006. She was 41 years of age at that time. She has a limited education. No one disputes that she cannot return to her past relevant work. She asserts both physical and mental severe imparments. Her medical history is accurately set forth in the Commissioner's brief as follows:

> In November 2006, Plaintiff went to the emergency room complaining of back pain that she rated 8 out of 10 (Tr. 206-09). She said she currently took no medication and had no primary physician (Tr. 208). On examination, she showed some decreased range of motion (Tr. 207). She was prescribed medication and discharged in satisfactory condition (Tr. 206, 209).
> Plaintiff returned to the emergency room the next month complaining of sore ribs and a sore throat (Tr. 202-05). Except for her tonsils, a physical examination was normal (Tr. 202). On discharge, Plaintiff rated her pain a 0 out of 10 (Tr. 205).
> In February 2007, Plaintiff saw psychologist Steven Lawhon, Psy.D., for a consultative psychological examination (Tr. 224-27). She said she had lost her

2

insurance and had not been on medication for more than two years (Tr. 225). She also said she had been incarcerated in the Johnson City Jail until about four months earlier (Tr. 225). Dr. Lawhon assessed anxiety, dysthymic disorder, and alcohol abuse, and assigned a present global assessment of functioning (GAF) score of 58 (Tr. 226). Dr. Lawhon concluded that Plaintiff was not significantly limited in her ability to understand and remember, moderately limited in her ability to sustain concentration and persistence, not significantly limited in her social interactions, and mildly to moderately limited in her work adaptation (Tr. 227).

That month, Plaintiff also saw Samuel Breeding, M.D., for a consultative physical examination (Tr. 229-33). Plaintiff's chief complaints were back pain, joint pain, fibromyalgia, anxiety, and panic attacks (Tr. 229-30). She stated that she quit her last job because of anxiety and back pain (Tr. 232). A musculoskeletal examination showed normal ranges of motion in all major joints except the low back, and Plaintiff had a normal gait and station (Tr. 231). A neurological examination was normal, and Plaintiff did not report pain with straight leg raises (Tr. 231). A low back x-ray showed minor degenerative changes and no acute trauma (Tr. 233). Dr. Breeding concluded that, in an 8-hour day, Plaintiff could lift at least 25 pounds occasionally, sit for at least 6 hours, and stand for at least 4 hours (Tr. 232).

In March and April 2007, Plaintiff went to the emergency room with complaints of pain (Tr. 261-62). She received pain medication (Tr. 261-62).

In March 2007, Plaintiff began receiving treatment for mental health complaints at Holston Counseling (Tr. 563-66). At an intake assessment, she reported problems with "nerves," anxiety, and some depression (Tr. 563). She was diagnosed with anxiety, depression, alcohol dependence in remission, and a personality disorder, and she received a GAF score of 50 (Tr. 565). Later that month, at a psychiatric evaluation, she appeared mildly depressed and mildly anxious, without overt symptoms of psychosis or any changes in cognitive function (Tr. 267). The psychiatrist prescribed medication and advised Plaintiff to continue working with a therapist or case manager (Tr. 267).

Plaintiff then began returning to Holston Counseling about every two months for medication checks (Tr. 266, 307, 319-20). In August 2007, she said she cried frequently and slept only four hours per night (Tr. 266). The nurse practitioner discussed increasing one of Plaintiff's medications, but Plaintiff declined (Tr. 266). On examination, Plaintiff's mood was euthymic and her affect was friendly (Tr. 266). In November 2007, she appeared somewhat depressed and her affect was pleasant (Tr. 307). In January 2008, Plaintiff reported increased stress recently due to one of her children's illness (Tr. 320). She received an increased dose of one of her medications (Tr. 320). In March 2008, she said she had not been taking a sleep aid medication, and she had not been sleeping well (Tr. 319). Her mood appeared euthymic and her affect was friendly, she showed fair memory and concentration, and the nurse practitioner continued her medications (Tr. 319). Records show that Plaintiff did not show up to three medication check appointments in June and July 2008 (Tr. 561).

In 2007 Plaintiff also began receiving treatment from Appalachian Medical

3

Center (Tr. 264, 294-95). In May 2007, nurse practitioner Bob Reynolds completed a request for medical information form in which he checked a box indicating that Plaintiff was physically or mentally unfit for employment (Tr. 264).

Plaintiff returned to Appalachian Medical Center periodically through February 2010 for follow-up appointments. She reported that medication controlled her pain (Tr. 288, 292, 309, 311, 322, 617, 619, 710, 712, 714, 716). On examination, her low back was tender and showed decreased range of motion (Tr. 288, 292, 309, 311, 322, 617, 619, 710, 712, 714, 716). She showed symmetrical motor strength, no sensory defects, and a normal gait (Tr. 288, 292, 309, 311, 322, 617, 619, 710, 712, 714, 716). Plaintiff also reported anxiety, which she treated with medication and associated mostly with social, family, and financial stressors (Tr. 288, 292, 309, 311, 322, 617, 619, 710, 712, 714, 716). Through November 2007, she reported that medication controlled her anxiety (Tr. 288, 292, 309, 311). Beginning in January 2008, she said that medication "help[ed]" her anxiety (Tr. 322, 324, 619). In June 2009, she began reporting again that medication controlled her anxiety (Tr. 710, 712, 714, 716). A nurse practitioner prescribed medication and instructed Plaintiff in non-pharmacological methods of stress relief (Tr. 311, 322, 617, 619, 710, 712, 714, 716).

In February 2009, Plaintiff went to the emergency room complaining of back pain that she described as moderate and rated an 8 out of 10 (Tr. 597-99). A doctor assessed low back pain and sciatica and prescribed medication (Tr. 598).

Plaintiff returned to the emergency room in August 2009 complaining of severe pain after an altercation with her boyfriend (Tr. 573). Except for some bruising and tenderness in the left arm, a physical examination was normal (Tr. 574). An x-ray revealed a fracture on the fourth finger of the left hand (Tr. 578).

In April 2010, Plaintiff returned to the emergency room complaining of chronic pain that she rated an 8 out of 10 and said was relieved by nothing (Tr. 579). On examination, she had tenderness in her low back and reduced range of motion due to pain (Tr. 580). She received medication refills (Tr. 580).

Plaintiff retuned to Holston Counseling in May 2010 for an intake assessment (Tr. 605-06). She reported a 20-year history of depression and anxiety (Tr. 605). The provider noted that Plaintiff had previously received outpatient treatment at Holston Counseling with limited compliance (Tr. 605). Plaintiff was again enrolled in outpatient treatment (Tr. 607).

In July 2010, Plaintiff returned for a psychiatric evaluation and reported increasing depression (Tr. 602-04). The psychiatrist noted that Plaintiff had "apparently advised her case manager . . . that she needed Xanax" and stated that "the doctor better give it to her" (Tr. 602). On mental status examination, Plaintiff had no abnormal mannerisms and effectively participated in treatment discussions and decisions (Tr. 603). The psychiatrist assessed depression, anxiety, and alcohol dependence in reported remission (Tr. 603). The psychiatrist assessed a GAF score of 65 and prescribed medication (Tr. 603). The psychiatrist advised Plaintiff that it would be inappropriate to prescribe her controlled medications such as Xanax and recommended that Plaintiff avoid such substances (Tr. 603).

4

In October 2010, Plaintiff was discharged from outpatient treatment at Holston Counseling due to non-compliance after missing appointments (Tr. 607).

That month, Plaintiff went to Imperial Health Services complaining of more pain and anxiety (Tr. 724). She received medication and returned two days later complaining of back pain radiating to her left leg (Tr. 723-24). The provider noted that she would need to see Plaintiff's records before she could refill pain prescriptions (Tr. 723).

In March 2011, Plaintiff returned to the emergency room complaining of a two-week history of pain in her neck and back (Tr. 631). She displayed tenderness in her back and decreased range of motion due to pain (Tr. 632). A physician's assistant assessed chronic pain and prescribed medication (Tr. 632).

The next month, Plaintiff went to Kingsport Medical Center to establish care (Tr. 634). She received medications for pain and expressed interest in physical therapy (Tr. 634). Regarding anxiety and depression, she indicated that she would try to "get back in" with a psychiatrist (Tr. 634).

On October 26, 2011, Plaintiff saw Krish Purswani, M.D., for a consultative physical examination (Tr. 642-51). Dr. Purswani concluded that, during an 8-hour day, Plaintiff could lift 30 pounds frequently, stand and walk for 7 hours, and sit for 8 hours (Tr. 645-47). Dr. Purswani opined that Plaintiff could frequently operate controls with her feet, frequently push and pull with her arms, and frequently perform postural activities (Tr. 648). Dr. Purswani also opined that Plaintiff could frequently operate a motor vehicle and work around vibrations, occasionally work around moving mechanical parts, and never work at unprotected heights (Tr. 649-50).

The next month, Plaintiff saw Elizabeth Jones, M.A. for consultative psychological examination (Tr. 653-59). After the examination, Ms. Jones and Diane Whitehead, Ph.D., completed a mental medical source statement (Tr. 661-63). Ms. Jones and Dr. Whitehead opined that Plaintiff was moderately limited in her ability to: understand, remember, and carry out simple instructions; make judgments on simple work-related decisions; interact appropriately with others; and respond appropriately to usual work situations and changes (Tr. 661-62). The form the providers completed defined a moderate limitation as "more than a slight limitation in this area but the individual is still able to function satisfactorily" (Tr. 661).

In December 2011, Plaintiff was hospitalized for a week for thoughts of suicide (Tr. 671-81). She reported "binge drinking" alcohol (Tr. 687). On discharge, she reported diminished withdrawal symptoms and a "good" mood (Tr. 671-72). She received a GAF score of 50 (Tr. 672). Plaintiff received medications and was counseled on the importance of medication compliance (Tr. 672).

In February 2012, Plaintiff was again hospitalized for a week to receive treatment for depression and post-traumatic stress disorder (Tr. 725-47). At the time of Plaintiff's admission, medical providers suspected that she was withdrawing from some type of substance (Tr. 725, 728). Plaintiff stabilized over the course of her hospitalization (Tr. 725). On discharge, she felt better and reported that her depression had lifted (Tr. 725). She received a GAF score of 50, and a doctor opined

5

that her prognosis was good with continued outpatient follow-up (Tr. 726).

[Doc. 16, pgs. 2-8].

As previously stated, this case involves two prior opinions by an ALJ and two remands before the opinion was rendered which is the subject of this appeal. The first ALJ opinion, rendered in August of 2008, found the plaintiff had the residual functional capacity ["RFC"] to "lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit for six hours, and stand/walk for six hours in an eight hour day. The claimant is limited to simple, unskilled jobs not involving the public. The claimant cannot work within temerature extremes or near dust or fumes. The claimant does not have postural, visual, communicative, or manipulative limitations." (Tr. 19). With those limitations, a vocational expert ["VE"] found that there were a substantial number of jobs she could perform.

The sole basis for remand of that first decision was because the ALJ erred by not finding that plaintiff had certain limitations opined by medical experts without explaining the rejection of those opined limitations. Because of this, the district judge in the Western District of Virginia stated that he could not "say that the ALJ's decision was supported by substantial evidence." (Tr. 430-432).

Upon remand, the ALJ found that the plaintiff had the RFC "to perform light work...except the claimant is limited to simple routine jobs that would not require frequent interaction with the public and which would not expose her to excessive dust, fumes, chemicals, and temperature extremes." (Tr. 445). Once again based upon a VE's testimony, the ALJ found that she was not disabled. (Tr. 450-451).

The Appeals Council remanded the case at that point for a variety of reasons. First,

the Appeals Council stated the second decision did not explain why the postural limitations opined by a State Agency physician were not included in the RFC finding when he gave the opinion great weight. It also stated that the ALJ erred when he did not include in his RFC finding a conclusion of the mental consultative examiner that the plaintiff had "a mild to moderate limitation in work change adaptability..." when that opinion was given great weight, and did not explain how that limitation was satisfied in the RFC finding. Also with regard to plaintiff's mental condition, the Appeals Council found that the ALJ erred in not explaining why he found in the second decision that plaintiff was "restricted to no <u>frequent</u> interaction with the public when he previously found that the plaintiff "was restricted to <u>no</u> interaction with the public in the prior hearing decision." Also, they found that the ALJ erred in rejecting without explanation a portion of an opinion by a State Agency consultant that the plaintiff would have difficulty interacting with supervisors. They also found that the ALJ did not adequately set forth his reasons for finding that the plaintiff was not credible insofar as she had subjective complaints which were inconsistent with the ALJ's RFC finding. Specifically, they stated he did not "adequately consider" in weighing her credibility the factors of "prior work record; daily activities; the location, duration, frequency and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication, treatment other than medication and other measures used to relieve symptoms." (Tr. 459-460).

The Appeals Council gave instructions on what was to be done on remand, including evaluating "the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 416.929 and Social

7

Security Ruling 96-7p" and obtaining medical expert evidence to "clarify the nature and severity of the claimant's impairments." They also took the somewhat unusual step of directing "that upon remand, this case be assigned to another Administrative Law Judge." (Tr. 560-461).

At the third administrative hearing in June of 2012, the ALJ took the testimony of two non-examining experts who had read plaintiff's medical records. Their testimony is summarized in the defendant Commissioner's brief as follows:

> Regarding physical limitations, Theron Blickenstaff, M.D., concluded that the evidence in the record indicated that Plaintiff could lift no more than 25 pounds occasionally and 10 pounds frequently (Tr. 384-85). Dr. Blickenstaff also opined that Plaintiff could only occasionally work overhead with either arm (Tr. 385). Finally, Dr. Blickenstaff noted that any other physical limitations would depend on an evaluation of Plaintiff's subjective complaints (Tr. 385). Regarding mental limitations, Olin Hamrick, Jr., Ph.D., opined that, when sober and compliant with medication, Plaintiff would be capable of performing simple unskilled work (Tr. 388). Dr. Hamrick also opined that Plaintiff would have moderate limitations in dealing with complex situations, dealing with the public, dealing with work stresses and changes, and maintaining concentration, persistence, and pace in simple unskilled work settings (Tr. 388).

[Doc. 16, pg. 9].

At that administrative hearing, the ALJ also took the testimony of VE Cathy Sanders. He asked Ms. Sanders to assume a person who "can do light work; frequent posturals; occasional ropes, ladders, scaffolds; occasional overhead reaching bilaterally; frequent handling and fingering with the right upper extremity; avoid concentrated exposure to hazards...Limited to simple, routine, repetitive work; better with things than people." When asked if there were jobs which such a person could perform, Ms. Sanders identified well over a million jobs in the national economy, as well as thousands in the State of Tennessee, which such a person could perform (Tr. 392-393).

8

The present ALJ's hearing decision begins with a thorough discussion of the remand requirements imposed by the Appeals Council (Tr. 343). After discussing the process involved in adjudicating Social Security claims, the ALJ found that the plaintiff had severe impairments of "cognitive disorder, affective disorder, anxiety related disorder, personality disorder, history of substance abuse disorder, degenerative disc disease, arthritis/degenerative changes, fibromyalgia, obesity, carpal tunnel syndrome, and status post ORIF[1] of the right wrist." (Tr. 346). The ALJ found that the plaintiff did not have severe impairments of asthma, COPD, gastric problems, hypertension or hepatitis (Tr. 346-347).

After finding that the plaintiff did not meet any of the listings of impairments, the ALJ noted that the plaintiff's carpal tunnel syndrome was mild and that he considered the effects of her obesity in her case even though obesity is no longer a listed impairment (Tr. 347). He then evaluated plaintiff's mental restrictions in various areas of functioning and the presence or absence of episodes of decompensation. Regarding her activities of daily living, he found that she has a mild restriction, basing this upon her activities, including caring for her person grooming and hygiene. He found that she had moderate difficulties in social functioning and with regard to concentration, persistence or pace, based upon the examinations of Dr. Lawhon and Elizabeth Jones (Tr. 348). He found that the plaintiff had suffered two episodes of decompensation of extended duration during her hospitalizations in December, 2011 and February 2012. Because she did not have at least two "marked" restrictions in either of her activities of daily living; social functioning; or in maintaining concentration, persistence or pace, he found that the B criteria of applicable mental listings. (Tr. 348-349)

---

[1]"Open reduction and internal fixation" of a fracture to that wrist"

He then opined that the plaintiff had the RFC "to perform light work...except the claimant can perform frequent posturals except for occasional climbing of ropes, ladders, and scaffolds; occasional overhead reaching bilaterally; no more than frequent handling and fingering with the right upper extremity; and she must avoid concentrated exposures to hazards. Mentally, the claimant is limited to simple, routine, repetitive work, and she is better with things than people." (Tr. 349).

The ALJ then described the required process for evaluating the plaintiff's symptoms, which requires determining whether there is an underlying medically determinable physical or mental impairment that could be expected to produce the plaintiff's pain or other symptoms, and if so, determine the extent to which they limit the plaintiff's functioning. In conjunction with determining the extent of limitation, the ALJ stated that he must make a finding regarding the credibility of plaintiff's statements. He recounted her testimony as to both her physical and mental impairments. He particularly noted that the plaintiff indicated at the hearing (Tr. 380) that she had last "probably" used alcohol back in 2006. (Tr. 350).

He then proceeded to state that he found the plaintiff to not be credible to the extent she claimed to be more limited by her symptoms in a manner which is inconsistent with the RFC finding. He first discussed her "fairly limited" description of her daily activities. He stated that they "cannot be objectively verified with any reasonable degree of certainty." He then stated that even if she was as limited in daily activities as she claimed, "it is difficult to attribute that degree of limitation to [her] medical conditions, as opposed to other reaons, in view of the relatively weak medical evidence and other factors discussed in this decision." He noted that her treatment for her impairments had "been essentially routine and

10

conservative in nature..." and that "treatment has been generally successful in controlling these symptoms." Regarding her mental symptoms, he noted that evidence suggested she had "not been entirely compliant in taking prescribed medications..." which he took as proof that her symptoms were not as limiting as she claimed. He noted gaps in the plaintiff's treatment history for her mental impairments. While she stated the gaps were caused by lack of insurance he noted she told a consultative examiner that it "was because her boyfriend would not let her participate in treatment." (Tr. 350-351).

The ALJ then mentioned specific testimony which he found called the plaintiff's credibility into question. He noted that she had testified that she had been diagnosed with a herniated disc in her lumbar spine for which surgery was recommended, when the most recent MRI of her lumbar spine (Tr. 664-665) showed no evidence of a herniated disc. He pointed out that the plaintiff testified that she was "clean" and had not abused alcohol since 2006 (Tr. 380) when the record from her December 7, 2011 hospitalization said she drank a six pack of beer daily with her last use in December of 2011. Finally, he noted that plaintiff testified about memory problems, while Ms. Jones noted during the consultative exam in November 2011, that the plaintiff did not have significant memory problems. (Tr. 351-352).

The ALJ then thoroughly discussed the medical evidence, noting once again the rather conservative treatment for her physical problems. He discussed the results of the various x-rays and scans. He also discussed the consultative examinations in detail. In this regard he noted that Dr. Purswani, aware of the plaintiff's physical ailments such as fibromyalgia and pain in her back and neck, and after an extensive physical examination, opined in October of 2011 that she could frequently lift 30 pounds, stand and walk for a total of 7 hours and sit

11

for 8 hours in an 8 hour work day and noted the postural limitations he described. (Tr. 353-354).

Dr. Blickenstaff's testimony was discussed, which would support a physical range of light work with the caveat that "any other physical limitations would depend on the credibility of [plaintiff's] subjective complaints." (Tr. 354).

He then discussed all of the mental health records in the case. He discussed Dr. Lawhon's consultative exam in 2007, including Dr. Lawhon's recommendation that both psychiatric and substance abuse treatment were recommended. He discussed the services she received during various treatment relationships with Frontier Health which resulted in conservative treatment and were eventually ended because she kept missing her appointments. He discussed her treatment at Appalachian Medical Center where medications helped and controlled her anxiety. He detailed the findings of Ms. Jones, who consultatively examined the plaintiff under the supervision of Dr. Whitehead in November of 2011, noting the moderate limitations Ms. Jones and Dr. Whitehead found, and that moderate limitations were defined on the form used by them as consisting of "more than a slight limitation in this area but the individual is still able to function satisfactorily." (Tr. 355-356).

He then discussed her admissions to Woodridge on an emergency commitment basis in December and February of 2012. Both were noted to have involved suicidal ideation but also substance abuse and/or withdrawal symptoms. He discussed Dr. Hamrick's testimony at the hearing, and the opinions of the State Agency consultants, both physical and mental. (Tr. 356-357).

He then discussed the weight given to the various medical and mental opinions. He

12

gave great weight to Dr. Blickenstaff, but explained that he found, based upon other evidence, that the plaintiff had more limitations in her RFC than those noted by Blickenstaff. He gave great weight to the opinions of Ms. Jones and Dr. Whitehead, noting their findings of moderate limitations in certain areas, but again pointing out that the form used defined moderate as a level at which performance would still be satisfactory. He then gave some weight to Dr. Hamrick, but explained that he was giving greater weight to Jones and Whitehead. Dr. Lawhon's 2007 assessment was also given some weight, but found that the weight of other evidence supported the finding in the RFC that plaintiff was better with things than people. Dr. Breeding was given some weight, but not with respect to his opinion that the plaintiff could only stand or walk for 4 hours because of the other evidence which showed only minor degenerative changes. He gave some weight to Dr. Purswani, but not to the "limitation regarding no more than frequent use of her feet." He pointed to Dr. Purswani's examination results to support this. He gave little weight to the State Agency consultants, finding that more recent examinations and medical history revealed greater limitations than the ones they opined in 2007. Finally, he gave little weight to the assessment of nurse practitioner Bob Reynolds from 2007, because Reynolds had given plaintiff little if any treatment prior to filing out the form. (Tr. 358-360).

He then opined that while the plaintiff could not return to her past relevant work, she was nonetheless capable of performing jobs that, according to the VE, exist in substantial numbers in the national economy. Accordingly, he found that she was not disabled. (Tr. 360-361).

On April 17, 2013, the Appeals Council issued an opinion that they had reviewed the

13

Case 2:14-cv-00088-JRG-DHI   Document 17   Filed 02/19/15   Page 13 of 17   PageID #: 874

ALJ's decision and found no reason to interfere, leaving it as the Commissioner's final decision. In affirming the ALJ, the Appeals Council specifically mentioned the original district court remand and the instructions from the Appeals Council prior to the last remand, finding that the ALJ had made an appropriate decision and was supported by substantial evidence. They discussed the ALJ's finding on plaintiff's credibility, finding it supported by the plaintiff's conservative treatment, noncompliance with medication, gaps in treatment, and her untruthful testimony at the administrative hearing regarding her continued abuse of alcohol. (Tr. 331).

Plaintiff first asserts that the ALJ failed to properly consider and evaluate plaintiff's credibility. Plaintiff points out that plaintiff has diagnoses of various conditions and that she has consistently complained of symptoms which could be caused by those conditions. She notes the admittedly unusual statement by the ALJ that he found her complaint of limited daily activities suspect because it was difficult to verify daily activities and that even if she was limited, something other than her impairments was likely causing it. It is of course true that a statement by a person that their daily activities are limited is difficult to verify. However, no finder of fact is obliged to take subjective complaints as true if there is other evidence that a witness is not credible. To be sure, an ALJ is required to set forth reasons, and the present ALJ did. He noted three particular examples involving inconsistencies, or outright misstatements, regarding things plaintiff had told various people at various times. She told the ALJ she had been "clean" from drugs and alcohol since 2006, but Woodridge records indicated she was drinking a six pack per day when admitted in December of 2011. She testified about having been diagnosed with a herniated disc for which surgery had been

14

recommended when recent imaging studies had shown no evidence of a herniated disc. Also, she complained of serious memory problems, even though her most recent mental examination by Ms. Jones revealed no evidence of serious memory failures.

The Court is not exactly sure what the ALJ meant when he spoke of her restricted activities being caused by something besides her physical and mental impairments. Maybe he meant she was feigning to get benefits. Perhaps he meant her activities were limited by abusing alcohol. The Court will not speculate. But the examples in the preceding paragraph along with the conservative treatment supply a valid basis under the regulations and Social Security Ruling 96-7p for finding the plaintiff less than credible in her subjective complaints, and explain the ALJ's thoughts in this regard, at least in the opinion of this Court. Also, one cannot underestimate or disregard the fact that the ALJ observed the plaintiff's demeanor at the hearing and the inflection of her voice, which often give rise to perceptions of crediblity by a finder of fact which a printed record cannot adequately convey.

In this same vein, plaintiff asserts that the ALJ failed to properly evaluate her pain. However, all of the above stand as support for his finding that her pain does not limit her beyond the limitations set out in the ALJ's RFC finding. Once again, Dr. Purswani was totally cognizant of plaintiff's fibromyalgia, arthritis and alleged severe pain. The Court supposes that his functional capacity assessment takes into account what limits he perceives plaintiff's pain imposes upon her. That is why she is limited to a reduced range of light work in the first place. Virtually no medical professional has opined that she cannot at least meet the lifting requirements of light work, and most all agree she can meet the standing and walking requirements except for Dr. Breeding and Mr. Reynolds.

15

There is also ample evidence regarding the extent of the plaintiff's mental limitations in the 2007 report of Dr. Lawhon and the 2011 report of Ms. Jones. Also, the hospitalization at Woodbridge with alcohol abuse at the core clouds any finding of a more serious mental impairment. This is unfortunate, but it is a fact.

Plaintiff also asserts that the Appeals Council failed to consider evidence submitted after the ALJ's denial. In this regard, plaintiff asserts that while the Appeals Council issued its decision affirming the ALJ on April 17, 2013, plaintiff's counsel did not learn of it until January 27, 2014, in a phone call. However, this additional evidence, which is nowhere to be seen, was not sent to the Appeals Council until March 4, 2014. It was not erroneous for it to refuse to reconvene and consider that additional evidence a year after it declined to overturn the ALJ's decision.

The question of whether the evidence mentioned in the plaintiff's March 4th letter is "new and material" really does not matter at this point. Plaintiff's right to file this lawsuit was not compromised. Therefore, the place for that evidence to be considered is in a new proceeding.

For the foregoing reasons, the Court finds that there was substantial evidence to support the ALJ's RFC finding and his question to the VE. There was ample evidence for him to determine that the plaintiff was not fully credible. The ALJ and the Appeals Council complied with the law and regulations. It is respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 11] be DENIED, and the defendant Commissioner's

Motion for Summary Judgment [Doc. 15] be GRANTED.[2]

                Respectfully submitted,

                                              s/ Dennis H. Inman
                                              United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).